IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA K. C.,

        **Plaintiff,**

v.                                               Civil Action 2:20-cv-5184
                                                    Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

**OPINION AND ORDER**

        Plaintiff, Angela K. C., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 8, 9). For the following reasons, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.     BACKGROUND**

        Plaintiff filed her applications for DIB and SSI on August 18, 2017, alleging that she was disabled beginning August 27, 1998. (Tr. 171–77). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on October 25, 2019. (Tr. 27–45). The ALJ denied benefits in a written decision on December 19, 2019. (Tr. 9–26). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

        Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 2, 2020 (Doc. 1), and the Commissioner filed the administrative record on March 31, 2021 (Doc.

16). Plaintiff filed her Statement of Errors (Doc. 19) on July 14, 2021, and Defendant filed an Opposition (Doc. 21) on August 30, 2021. Plaintiff filed her Reply (Doc. 22) on September 14, 2021. Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and the relevant hearing testimony:

> The [Plaintiff] alleged disability due to back problems (3E/2). She reported that stopped working due to the commute causing her back pain (3E/8). At the hearing, the [Plaintiff] reported that she has a back impairment and diabetes. She stated she gets one injection a week for her diabetes, and it keeps her blood sugar under control. The [Plaintiff] alleged that she has fallen a lot in the past year and was prescribed a cane approximately one month ago. The [Plaintiff] alleged that she has to lay down throughout the day and estimated she is able to lift up to five pounds repetitively. She stated she has an implant in her back, but stated it presently is not helping her. Functionally, the [Plaintiff] estimated she can stand or walk for 30 minutes at a time before she gets weak and cannot bend or squat and can sit for 45-60 minutes. She alleged that she does not cook, clean, do laundry, or drive.

(Tr. 17).

> At the hearing, the [Plaintiff] reported she was prescribed a four-prong cane the month prior and had fallen approximately 20 times in the past year (Testimony).

(Tr. 19).

### B. Relevant Medical Evidence:

The ALJ summarized the relevant medical records:

> A lumbar spine x-ray in May 2014 showed mild degenerative joint and post-surgical changes (3F/102). A CT scan of the lumbar spine in June 2014 showed post-surgical changes at L4-5, with no significant degenerative changes at that level, broad based left subauricular protrusion at L1-2 that caused moderate left neuroforaminal stenosis and mild left lateral recess stenosis, and mild central canal stenosis at L2-3 and L3-4 due to mild disc bulge and ligamentum flavum hypertrophy (3F/58). The [Plaintiff] had lumbar epidural steroid injections in 2016 and reported improvement after each (3F/54, 55, 65, 72). In September 2016, the [Plaintiff] stated the epidural injections only gave her temporary relief and requested a spinal cord stimulator (3F/47). The [Plaintiff] had a temporary spinal

cord stimulator placed in April 2017 and subsequently reported the stimulator trial went well and she wished to proceed with a permanent spinal cord stimulator (2F/13, 17, 21). An x-ray in May 2017 showed osteoarthritic changes on the left between L5 and S1, narrowing of the L4-5 and L5-S1 disc spaces with endplate sclerosis consistent with degenerative disc disease, osteophytes in the upper three disc spaces consistent with degenerative disc disease (2F/15).

The [Plaintiff] returned in August 2017 for permanent spinal cord stimulator placement (2F/7). Approximately two weeks after placement, she reported 70 percent improvement in her pain and that she was happy with the results of the procedure and taking less medication (2F/5, 7). Later that month, the [Plaintiff] reported tenderness in her lumbar and sacral areas, but physical examination was otherwise unremarkable (2F/6). In October 2017, the [Plaintiff] reported the stimulator helped, but that she sometimes experienced breakthrough pain (3F/9). It was noted the [Plaintiff] was independent with her activities of daily living (3F/9). Upon examination, the [Plaintiff] had mildly limited range of motion in her lumbar spine and normal gait (3F/11). She reported tenderness over the generator site and her medication was adjusted (3F/11).

The [Plaintiff] did not seek further care until December 2017 and she reported tenderness over the lumbar musculature and facets and exhibited a mildly antalgic gait and moderately limited lumbar motion (3F/7). In January 2018, the [Plaintiff] reported 6/10 pain where the stimulator battery was placed, as well as "pins and needles" in her feet, particularly at night (4F/25). She continued to report that her spinal cord stimulator helped a lot with her low back pain and she was independent with activities of daily living (4F/25). She denied numbness, dizziness, or abnormal sleep (4F/27). During examination, the [Plaintiff] reported tenderness over the lumbosacral musculature and had a mildly antalgic gait and antalgic transitional movements; however, the remainder of her examination was unremarkable (4F/27). In March 2018, the [Plaintiff] reported tenderness to palpation in her lumbar and sacral areas, but was in no acute distress (4F/24). She denied fatigue, increased somnolence, or abnormal sleep habits (4F/20). She reported 5/10 pain and stated medication was helping (4F/23). She requested a referral for a new pain medication specialist (4F/22). Later that month, the [Plaintiff] reported that an adjustment to her spinal cord stimulator helped her leg pain and had a mildly antalgic gait (4F/20-21).

During a routine follow up in June 2018, it was noted the [Plaintiff] had fair symptom control, and her examination was unremarkable aside from her reports of tenderness to palpation in her lumbar and sacral areas (4F/16). Later that month, the [Plaintiff] reported her pain was 0/10; however, she reported high blood sugar, fatigue, and tingling in her bilateral lower extremities (4F/11). During examination, the [Plaintiff] reported 0/10 sensation in her right foot during monofilament testing, and 4/10 sensation in her left foot (4F/12). However, she also demonstrated normal gait, station, and strength (4F/12). The remainder of her examination was unremarkable (4F/12). Approximately 10 days later, the [Plaintiff] reported

3

worsening back and leg pain, but it was noted that her spinal cord stimulator battery needed replacement (4F/7, 9). She continued to report that she was independent in her activities of daily living and denied any falls in the past year (4F/7). She reported medication helped her pain (4F/9).

In July 2018, the [Plaintiff]'s bilateral lower extremities were cool to the touch and had minimal hair; however, her dorsalis pedis and posterior tibial pulses were normal (4F/66). She reported 2/10 sensation in her left foot during monofilament testing and 1/10 sensation to her right foot (4F/66). She denied fatigue (4F/62). The [Plaintiff] was able to ambulate normally and musculoskeletal examination showed normal tone, motor strength, and movement of all extremities (4F/66). Later that month, the [Plaintiff] denied symptoms and demonstrated a normal station and smooth, coordinated gait, as well as normal muscle strength and tone, reflexes, and sensation (4F/63).

There is little to no evidence the [Plaintiff] sought treatment again until September 2018, at which time she reported tenderness to palpation in her iliolumbar region and pain with motion and rated her pain at 5/10 (4F/56, 60). She continued to report that she felt her spinal cord stimulator battery had died (4F/57). She was advised to continue taking Lyrica (4F/57). That month, the [Plaintiff]'s blood glucose was slightly elevated and her HGB A1C was 6.6 (4F/73-74). It was noted the [Plaintiff] was "feeling good" and her physician noted her A1C was much improved (4F/53).

In October 2018, she continued to report numbness and tingling in her legs, but showed normal ambulation, gait, station, motor strength, tone, and movement of all extremities (4F/54). She denied pain (4F/51).

The [Plaintiff] did not seek treatment again until December 2018, when she reported tenderness in the iliolumbar region with palpation and pain with active range of motion (4F/50). Her medication was refilled (4F/50). In January 2019, the [Plaintiff] demonstrated normal gait, station, motor strength and tone, as well as normal ambulation (4F/47). The [Plaintiff]'s HGB A1C was 7.9 in January 2019, and she reported her blood sugar had been higher due to increased stress and the holidays, but she was feeling good (4F/46, 70).

She reported tenderness to palpation in the iliolumbar region and pain with motion in April 2019 and was instructed to continue her medication (4F/43). In July 2019, the [Plaintiff] again reported tenderness in her iliolumbar region and pain with motion; however, she continued to demonstrate a normal gait, station, ambulation, and motor strength (4F/35, 39-40). She reported her pain scale was "0" during one examination and "7" during another (4F/33, 36). She stated she felt her spinal cord stimulator was not working well (4F/35). Her blood glucose level and HGB A1C improved that month (4F/68-69).

[ ] … there is no medical evidence of record related to her cane and the [Plaintiff] denied falls during the relevant period and was frequently assessed as not being at

> risk for falls (3F/4, 15, 17; 4F/12, 16, 23, 38, 46, 53, 65). Additionally, the [Plaintiff] frequently demonstrated normal gait and ambulation (3F/9, 11; 4F/12, 39, 47, 54, 63, 66, for example). She has also frequently denied side effects from her medication (3F/4; 4F/18, 25, for example).

(Tr. 17–19).

### C. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirement through March 31, 2006 and engaged in substantial gainful activity during the following periods: calendar years 1998, 1999, 2000, and 2008. (Tr. 14). Yet, there has been a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity. (Tr. 15). Since August 18, 2017, the SSI filing date, the ALJ determined that Plaintiff suffered from the severe impairments of spinal disorders and diabetes mellitus. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (Tr. 16). The ALJ considered Plaintiff's spinal disorder under listing 1.04 but concluded that her condition does not satisfy the severity requirements of this listed impairment, as there is no evidence of nerve root compression or the requisite neurological deficits. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except for the limitations that follow. The [Plaintiff] can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl.

(*Id.*).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 17).

5

As to the medical source opinions, the ALJ determined:

The opinions of the State agency consultants were not persuasive. They opined the [Plaintiff] was capable of a range of light work with additional postural limitations (1A, 2A, 5A, 6A). While these opinions were reasonable, based on the evidence available at the time, additional evidence received into the record at the hearing level convinces the undersigned that the [Plaintiff] was more limited than originally thought (Social Security Ruling 96-6p). Particularly, the [Plaintiff]'s monofilament testing and spinal cord stimulator placement have convinced the undersigned that the [Plaintiff] should be limited to a range of sedentary work (4F/12, 66). Thus, these opinions were not persuasive.

Any opinions regarding the [Plaintiff]'s ability to work were neither valuable nor persuasive, as they relate to an issue reserved to the Commissioner of Social Security (3F/15, 4F/7, 16, for example).

(Tr. 20).

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a sales representative, but could perform the job duties of other unskilled, sedentary exertional representative occupations such as order clerk, with 62,000 jobs nationally, a ticket counter with 30,000 jobs nationally, and a table worker, with 25,000 jobs nationally. (Tr. 20–21). He therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act, since August 27, 1998. (Tr. 22).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III. DISCUSSION

Plaintiff argues that the ALJ erred at step three by improperly evaluating whether Plaintiff's spinal disorders meet or equal the requirements of Listing 1.04(A) and (C). (Doc. 19 at 9–15). Plaintiff next argues that the ALJ failed to develop the record fully and was not qualified to assess Plaintiff's functional limitations absent a competent medical opinion. (*Id.* at 15–19). The Commissioner counters that the ALJ explained why Plaintiff's impairments did not meet or medically equal listing 1.04, cited to specific evidence that supported his findings and properly concluded that she could perform a limited range of sedentary work. (*See generally*, Doc. 21).

#### A. Step Three Error

Plaintiff alleges that the ALJ erred at step three of the evaluation process by finding that her spinal disorders did not meet or equal § 1.04 of the Listing Impairments. (Doc. 19 at 12–17).

1. *Step Three of the Sequential Evaluation*

At the third step in the disability evaluation process, a plaintiff will be found disabled if his impairments meet or equal a listing in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.,* 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, describes impairments the Social Security

Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A plaintiff must satisfy all of the criteria to "meet" the listing. *Id.; Rabbers,* 582 F.3d at 653. In addition, the regulations require that the requisite abnormal findings must be established over a period of time: "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Part 404, Subpart P, Appendix I, § 1.000.

If a plaintiff's impairment does not meet a listed impairment, the plaintiff will still be found disabled at step three if her impairment is the medical equivalent of a listing. 20 C.F.R. § 404.1520(a)(4)(iii). To be the medical equivalent of a listed impairment, a plaintiff's impairment must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). An impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance to the findings necessary to meet the listing. 20 C.F.R. § 404.1526(b)(l). *Tipton v. Comm'r. of Soc. Sec.,* No. 2:14-cv-1209, 2015 WL 3505513, at *5 (S.D. Ohio June 3, 2015) ), *report and recommendation adopted,* 2015 WL 3952347 (S.D. Ohio June 29, 2015). To the extent an individual claims her impairments are equivalent in severity to a listing, she bears the burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in the original). The ALJ is required to compare the medical evidence with the components of listed impairments in considering whether the condition is equivalent in severity to the medical findings for a listed impairment. *See Lawson v. Comm'r of Soc. Sec.,* 192 F. App'x 521, 529 (6th Cir. 2006). When performing this analysis, the ALJ must "consider all evidence in

[the] case record about [the plaintiff's] impairment(s) and its effects on [the plaintiff] that is relevant to this finding." 20 C.F.R. § 404.1526(c).

Notably, "the court may uphold a conclusory step three finding if the ALJ's findings at other steps of the sequential evaluation provide a sufficient basis for the ALJ's step three finding." *Asbury v. Comm'r of Soc. Sec.*, No. 1:18-CV-365, 2019 WL 3916479, at *4 (S.D. Ohio Aug. 20, 2019), *report and recommendation adopted*, No. 1:18CV365, 2019 WL 4452677 (S.D. Ohio Sept. 17, 2019); *see also Gang v. Comm'r of Soc. Sec.*, No. 2:20-CV-3267, 2021 WL 2800709, at *11 (S.D. Ohio July 6, 2021), *report and recommendation adopted*, No. 2:20-CV-3267, 2021 WL 3488015 (S.D. Ohio Aug. 9, 2021). The Sixth Circuit elaborated on the ALJ's role at step three:

> The ALJ [does] not err by not spelling out every consideration that went into the step three determination. The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a listed impairment.

*Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (internal quotation marks omitted). Even if adequate support for the ALJ's step three finding is lacking, the error is harmless where the plaintiff has not shown that her impairments met or medically equaled the severity of any listed impairment. *Asbury*, 2019 WL 3916479, at *4 (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

2. *Listings 1.04(A) and 1.04(C)*

Listings § 1.04(A) and § 1.04(C) cover "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, App 1, § 1.04 (available at: https://secure.ssa.gov/poms.nsf/lnx/0434121013).

9

For Listing 1.04(A), the disorder of the spine resulting in compromise of nerve root must be accompanied by: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.*

For Listing 1.04(C), the disorder of the spine resulting in compromise of nerve root must be accompanied by: "Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00 B2b." *Id.* An "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1) (available at: https://secure.ssa.gov/poms.nsf/lnx/0434121013). Generally, an individual is unable to ambulate effectively if she has "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . ." *Id.*

3. *ALJ's Step Three Analysis*

Here, Plaintiff argues that "[t]he ALJ's failure to discuss and properly evaluate whether Plaintiff's spinal disorders equaled the severity of the listed impairment at Step Three constitutes reversible error as a matter of law, which requires remand." (Doc. 19 at 12). It is worth noting that Plaintiff did not argue before the ALJ that she equaled the Listing. Still, the ALJ considered whether Plaintiff's spinal impairment satisfied the criteria of Listing 1.04. (Tr. 16). The ALJ found that Plaintiff's "impairments do not meet the criteria of any listed impairment described in

10

Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). Moreover, no treating or examining physician has cited findings equivalent in severity to the criteria of any listed impairment, nor does the evidence otherwise establish medical equivalency." (*Id.*). Specifically, regarding Listing 1.04, the ALJ found that Plaintiff's condition "does not satisfy the severity requirements of this listed impairment, as there is no evidence of nerve root compression or the requisite neurological deficits." (*Id.*).

Now, Plaintiff contends that the ALJ's analysis was too slight. (Doc. 19 at 12).

### 4. *Substantial Evidence*

At step three, the ALJ properly found that Plaintiff's spinal impairment did not meet or equal Listing 1.04, including 1.04(A) and 1.04(C), and this finding is supported by substantial evidence. To support this conclusion, the ALJ found that Plaintiff's "impairments do not meet the criteria of any listed impairment." (Tr. 16). For Listing 1.04 specifically, the ALJ explained that severity for 1.04 is not met because there is "no evidence of nerve root compression or the requisite neurological deficits." (*Id.*). Furthermore, "no treating or examining physician has cited findings equivalent in severity to the criteria of any listed impairment . . . ." (*Id.*). And "neither Plaintiff nor her counsel contended that any of the severe impairments actually met or equaled a Listing." (*Id.*).

Plaintiff alleges that the ALJ should have articulated why he concluded her impairments did not meet the Listings. (Doc. 19 at 12–13). Specifically, Plaintiff alleges that the ALJ "failed to identify . . . other relevant and probative medical evidence in reaching his listing determination." (Doc. 19 at 15). And Plaintiff argues that the ALJ should have considered her limited lumbar range of motion (*Id.* at 15 (citing Tr. 287, 301, 329)), positive straight leg test results (*Id.* at 15

11

(citing Tr. 287, 293, 329, 446)), her antalgic gait (*Id.* at 15 (citing Tr. 287, 293, 329, 457)), and antalgic transitional movements (*Id.* at 15 (citing Tr. 287, 293, 329, 457)).

To meet Listing 1.04(A), Plaintiff would have to show that she had (1) a disorder of the spine resulting in compromise of nerve root, (2) nerve root compression, and (3) the other components of Listing 1.04(A)—range of motion, motor loss, sensory or reflex loss, and straight-leg raising tests. *Brauninger v. Comm'r of Soc. Sec.*, No. 1:16-CV-926, 2017 WL 5020137, at *4 (S.D. Ohio Nov. 3, 2017), *report and recommendation adopted*, No. 1:16-CV-926, 2018 WL 1420573 (S.D. Ohio Mar. 22, 2018), *aff'd*, No. 18-3495, 2019 WL 2246791 (6th Cir. Feb. 25, 2019). The ALJ found Plaintiff satisfied the threshold requirement by finding at step two that her spinal disorder was a severe impairment. (Tr. 15). But the ALJ concluded that there was no evidence of nerve root compression, a requirement of Listing 1.04(A). (Tr. 16). In briefing, Plaintiff does not argue that she has nerve root compression. (*See generally* Doc. 19). The Court, upon an independent review of the record, did not find evidence in the record of nerve root compression. Rather, Plaintiff argues that "nerve root compression is evidenced by limitation of motion of the spine and . . . positive straight leg tests." (*Id.* at 15). But Plaintiff still "must prove nerve root compression" along with the other components including a limited range of motion. *Brauninger*, 2017 WL 5020137, at *4. Plaintiff cannot substitute other required components of Listing 1.04(A) as evidence of nerve root compression; instead, she must satisfy both. Because Plaintiff did not show evidence of nerve root compression, the ALJ's finding that Listing 1.04 was not satisfied is supported by substantial evidence.

As for Listing 1.04(C), Plaintiff must demonstrate that she is unable to ambulate effectively. 20 C.F.R. Part 404, Subpart P, App 1, § 1.04. This is "an extreme limitation of the ability to walk" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1). At other steps of the

analysis, the ALJ found that Plaintiff "frequently demonstrated normal gait and ambulation." (Tr. 19 (citing Tr. 349, 476, 484, 491, 500, 503)); (*see also* Tr. 18 (citing Tr. 503)).  The ALJ also found that there was no medical evidence related to Plaintiff's cane, and that she was not at risk for falls.  (Tr. 19 (citing Tr. 347, 449, 453, 460, 475, 483, 490, 502)).  These findings at other steps in the evaluation can provide a sufficient basis for the ALJ's step three finding.  *See Asbury*, 2019 WL 3916479, at *4.  Because there is evidence that Plaintiff can ambulate effectively, the ALJ's finding that Listing 1.04(C) was not satisfied is supported by substantial evidence.

Plaintiff also alleges that the ALJ erred because he did not find that Plaintiff's impairments were medically equivalent to Listings 1.04(A) or 1.04(C).  It is possible for a plaintiff to provide evidence of a medical equivalent to a listing.  20 C.F.R. §§ 404.1526, 416.926.  But to do so, "the [plaintiff] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citing *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990) (emphasis in original)); *Thacker v. Soc. Sec. Admin.,* 93 F. App'x 725, 728 (6th Cir. 2004) ("When a [plaintiff] alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Secretary of Health & Human Servs.,* 835 F.2d 161, 164 (6th Cir. 1987)).  Again, Plaintiff has offered no evidence to show that she can satisfy every requirement of either Listing.

For the above reasons, the ALJ did not err.  But even if he did, the Sixth Circuit recognizes that any error with respect to an ALJ's step-three analysis is harmless unless the plaintiff can establish that she satisfied the listing in question.  *Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. 2014); *see also Chappell v. Comm'r of Soc. Sec.,* No. 1:14–cv–1005, 2015 WL

4065261, at * 4 (W.D. Mich. July 2, 2015). Plaintiff tries to avoid application of harmless error by citing cases where the ALJ failed to complete the step three analysis or did not discuss a relevant listing at all. (Doc. 19 at 17 (citing *Risner v. Comm'r of Soc. Sec.*, No. 1:11-CV-036, 2012 WL 893882, at *5 (S.D. Ohio Mar. 15, 2012) (remanding because the ALJ did not identify which listings he considered and did not explain why a listing was not met)); *Capizzi v. Colvin*, No. 2:14-CV-1063, 2015 WL 5117698, at *4–5 (S.D. Ohio Sept. 1, 2015) (remanding because the ALJ failed entirely to discuss Listing 1.04(C) despite Plaintiff from the outset stating he may have equaled that listing)); *Bolla v. Comm'r of Soc. Sec.*, No. CIV.A. 11-11008, 2012 WL 884820, at *6 (E.D. Mich. Feb. 3, 2012), *report and recommendation adopted*, No. 11-CV-11008, 2012 WL 882780 (E.D. Mich. Mar. 15, 2012) (remanding because the ALJ completely failed to analyze Listing 11.09 when Plaintiff's step two severe impairment would indicate that analysis necessary))). But here, the ALJ specifically consider Listing 1.04 and explained why Plaintiff did not meet that listing at step three and in other parts of the opinion. (Tr. 16–19). So, even if the ALJ erred, it was harmless.

    **B. RFC**

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a plaintiff's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several

14

factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work. (Tr. 16). Plaintiff alleges the ALJ erred because he "failed to fully and fairly develop the record because he failed to obtain a proper opinion from a medical source, and instead improperly substituted his own lay judgment." (Doc. 19 at 17–18).

The ALJ's role is to determine the RFC based on his evaluation of medial and non-medical evidence. The ALJ discussed Plaintiff's medical record, including Plaintiff's back problems and diabetes. (Tr. 17–19). The ALJ noted that a CT scan showed post-surgical changes at L4-5, a broad based protrusion at L1-2 causing moderate stenosis, and a central canal stenosis at L2-3 and L3-4. (Tr. 17 (citing Tr. 390)). In addition, he discussed Plaintiff's spinal cord stimulator and that Plaintiff still experienced pain. (Tr. 18–19 (citing Tr. 275, 341, 462, 444, 446, 494, 487)). Yet, the ALJ also noted that at times Plaintiff's pain was improved or under control and that she had normal ambulation, gait, station, motor strength, tone, and movement of extremities. (Tr. 19 (citing Tr. 488, 462, 460, 458, 448, 446, 343, 449, 503, 500, 484)). The ALJ also found that Plaintiff's use of a cane is not medically necessary because there is no medical evidence related to the cane, and Plaintiff was frequently assessed as not being at risk for falls. (Tr. 19).

In addition to considering Plaintiff's medical record, the ALJ considered the opinions of the State agency consultants in making the RFC determination. (Tr. 20). The State agency

15

consultants opined that Plaintiff "was capable of a range of light work . . . ." (*Id.*). The ALJ found these opinions to be reasonable at the time issued, but unreasonable (and thus unpersuasive) in light of the additional evidence received into the record. (*Id.*). The ALJ explained: Plaintiff's "monofilament testing and spinal cord stimulator placement have convinced the undersigned that the [plaintiff] should be limited to a range of sedentary work," rather than light work. (*Id.*). The ALJ permissibly adopted the State agency opinions in part. *See Hericks v. Astrue*, No. 1:10-CV-900, 2012 WL 161105, at *7 (S.D. Ohio Jan. 19, 2012), *report and recommendation adopted sub nom. Hericks v. Comm'r of Soc. Sec.*, No. 1:10-CV-900, 2012 WL 441169 (S.D. Ohio Feb. 10, 2012) ("The fact that the ALJ did not entirely adopt either of the RFC opinions offered by treating and consulting physicians is not contrary to the Sixth Circuit's opinion in *Hensley*, because the ALJ's analysis explains the basis for his opinions. After all, the determination of a plaintiff's RFC remains the province of the ALJ.). Similar to *Hericks*, the ALJ here added limitations in light of the record as a whole. *Id.* Specifically, the ALJ cited Plaintiff's "monofilament testing and spinal cord stimulator placement" in adjusting the RFC. (Tr. 20).

The ALJ also considered Plaintiff's testimony in which she stated "she can stand or walk for 30 minutes at a time before she gets weak and cannot bend or squat and can sit for 45-60 minutes. She alleged that she does not cook, clean, do laundry, or drive." Ultimately, the ALJ determined that "[plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms [is] not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 17). The ALJ goes on to discuss previously noted medical records, including those indicating control of Plaintiff's pain and her normal ambulation, gait, station, motor strength, tone, and movement of extremities. (Tr. 19 (citing Tr. 488, 462, 460, 458, 448, 446, 343, 449, 503, 500, 484)). The Sixth Circuit has held that the Court must accord great deference to an ALJ's

16

credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Snyder v. Comm'r of Soc. Sec.*, No. 2:16-CV-691, 2017 WL 1337592, at *6 (S.D. Ohio Apr. 12, 2017), *report and recommendation adopted*, No. 2:16-CV-691, 2017 WL 2061400 (S.D. Ohio May 11, 2017).

Plaintiff counters that the ALJ impermissibly "used his own lay judgment in determining Plaintiff's functional capacity and relied on his own interpretation of objective medical evidence in formulating the RFC." (Doc. 19 at 18–19). Plaintiff alleges this was improper interpretation of raw medical data. (*Id.* at 19). But the ALJ considered the RFC opinion of the State agency consultants and fashioned an RFC based on the record as a whole. This is what the ALJ was supposed to do. *See Henderson*, 2010 WL 750222, at *2; *Berry*, 2010 WL 3730983, at *8.

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

**IV. CONCLUSION**

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors be **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Date:   January 12, 2022                    /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE